UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FT. SMITH DIVISION

| | |
|---|---|
| CHARLES VINSANT, TARA BEAL, CHELSEA DYER, ASHLEY HAMILTON, ANTWAN HENDRY, BELINDA MAXWELL, BRITTANY MORRIS, KIMBERLY ROLAND and BETTY FULLER, each individually and on behalf of all others similarly situated, : : : : : : : | Civil No. 2:18-cv-2056-PKH |
| Plaintiffs, : | |
| v. : | |
| MYEXPERIAN, INC., : | |
| Defendant. : | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, FOR APPROVAL AND DISTRIBUTION OF NOTICE AND FOR DISCLOSURE OF CONTACT INFORMATION**

## I.  INTRODUCTION

Defendant MyExperian, Inc. ("Experian" or "Defendant") operates two call centers in Van Buren, Arkansas and Allen, Texas.  At both call centers, the Company has a Pay Practice that requires all non-exempt employees to accurately and completely record all of their working time including the actual start and end times of their work.  This time includes all of the alleged off-the-clock time at issue in this case such as time spent preparing to take customer calls, remaining at work after scheduled hours to finish calls, time spent booting computers up and down and logging in and out, and completing administrative tasks related to the calls.  This Pay Practice has been applicable to all of Experian's Customer Care Specialists ("CCSs")[1] at all relevant times.  For this reason, Plaintiffs have failed to establish the existence of a common

---

[1] Plaintiffs incorrectly call their title "Customer Service Representatives."

unlawful pay practice required to support conditional certification.  Plaintiffs' Motion therefore hinges on the Court's willingness to: (1) credit their totally unsupported allegations of off-the-clock work; (2) to summarily ignore the evidence offered herein establishing a pay practice that expressly requires employees be paid for the precise categories of time at issue in this case; and (3) ignore Defendant's evidence demonstrating that Plaintiffs' essential allegation in this case (that Plaintiffs clock in and are paid based on their scheduled hours of work) is false.  Even at this early stage, the Court must determine whether there is a "colorable basis" supporting Plaintiffs' claim of a common, unlawful policy including by considering the evidence offered by Experian.  The evidence offered herein demonstrates that Plaintiffs fail to satisfy even the light burden applicable at this stage and for this reason, Plaintiffs' Motion should be denied.

Because Experian's policy requires Plaintiffs to report the alleged off-the-clock time in question, liability in this case is totally dependent upon the CCSs either choosing to violate Experian's Pay Practice or their supervisors (who are also putative class members and include Named Plaintiff Charles Vinsant) instructing the CCSs to violate the policy.  Either liability showing is entirely individualized and therefore does not support certification.

Finally, even if Plaintiffs had worked off-the-clock, Plaintiffs are not "similarly situated" to the collective they seek to represent.  The CCSs and supervisors are not "similarly situated" to each other because the circumstances Plaintiffs allege would lead to the need to perform work off the clock for CCSs would not apply to supervisors.  The lead Plaintiff, Mr. Vinsant, was himself a supervisor.  Not even all of the CCSs are "similarly situated" because some do not make calls but rather respond to emails and as a result, have no need to work outside of their scheduled shift times.  In addition, a significant portion of the putative class, including three of the Named Plaintiffs, never worked for Experian but rather for a temporary staffing agency

whose employees were not governed by Experian's pay practices. Finally, the putative collective includes individuals to whom there can be no liability for Defendant including those who did not work for Experian and those whose claims are untimely.

Plaintiffs chose to file a Motion for Conditional Certification before conducting any discovery. Had they conducted discovery, they would have discovered that there is no common, unlawful policy instructing employees to misrecord their time. They likewise would have discovered the material differences amongst the putative class members. Defendant should not be prejudiced by having to defend a conditionally-certified collective action with notice going out to its employees alleging an unlawful pay practice when that practice simply does not exist.

## II.   ARGUMENT

### A.   Plaintiffs Fail To Demonstrate A Colorable Basis of A Common Policy That Violates The Law.

Plaintiffs concede that in order to show they are "similarly situated" even at the initial notice stage of class certification, they must *show* that they were "subjected to a common policy, practice or plan that affected all class members in a similar fashion." *See* Plaintiffs' Brief at 4. Plaintiffs' recitation of the standard leaves out one critical requirement—the common policy must be **unlawful**. Plaintiffs cannot merely show they were subjected to *any* common policy or practice. If that were the standard, Plaintiffs could allege, for instance, that Experian failed to pay them overtime for all hours worked over eight in a day. This would be a *common* practice, but not an *unlawful* practice because the FLSA does not require payment of daily overtime. An allegation that an employer paid a group of employees in a common, *lawful* manner cannot support sending notice of a potential *violation* of the law to Experian's employees.[2]

---

[2] *See Saleen v. Waste Mgmt.*, 649 F. Supp. 2d 937, 939-40 (D. Minn. 2009) ("Plaintiffs in this case argue that they are 'similarly situated' and subject to 'a single decision, policy, or plan' because all of them were subject to the automatic-deduction system. Obviously, though, this cannot be sufficient to justify

In order to avoid burdening the courts with collective actions where there has been no violation of the law, courts require Plaintiffs show that they and the potential opt-ins were together the victims of a common decision, policy, or plan **that violates the FLSA**. *See Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (plaintiffs must show they "suffer from a single, FLSA-violating policy"); *Harris v. Express Courier Int'l, Inc.*, 2016 U.S. Dist. LEXIS 127119, *10 (W.D. Ark. Sep. 19, 2016) (plaintiff must make "a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan *that violated the law*") (emphasis added).[3]  This requirement "provides for unified trial preparation, prosecution and defense on what appears to be a single [unlawful] decision motivating all the [employment actions] at issue." *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1966), *aff'd in relevant part*, 862 F.2d 439 (3d Cir. 1988), *aff'd*, 493 U.S. 165.  Indeed, "[t]he similarly situated analysis . . . centers upon the features which make the particular policy or practice **unlawful**." *Colozzi v. St. Joseph's Hospital Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009) (emphasis added).

In order to meet their burden at the notice stage to show a common decision, policy, or plan that violates the law, Plaintiffs "must present more than mere allegations; i.e., some evidence to support the allegations is required." *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226,

---

conditional certification. Any two people who work at the same time for the same employer are going to be subject to *some* common policies. That does not mean that a class may be conditionally certified any time two employees of the same company bring an FLSA action. What the case law . . . requires is that the putative class members be the '*victims* of a single decision, policy, or plan.' In other words, the putative class members must be harmed by an *unlawful* companywide policy."); *Thompson v. Speedway SuperAmerica LLC*, 2008 U.S. Dist. LEXIS 115050 (D. Minn. Jan. 20, 2009) ("some reasonably reliable basis for certification of a collective action is required, or else there will be an inevitable trolling, with a most attractive of lures -- pay over and above that already received -- for those who, individually, and episodically, may have suffered some form of a pay loss that they, on a contemporaneous basis, did not grieve.").

[3] There are 34 district court decisions in the Eighth Circuit alone which include the requirement that the common policy at issue must be "unlawful" in order for the Court to grant conditional certification and issue notice to putative class members.

1229 (W.D. Mo. 2007) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996);

*Freeman v. Wal-Mart Stores, Inc.*, 256 F.Supp.2d 941, 944 (W.D. Ark. 2003)).   Plaintiffs have

not and cannot satisfy this burden because Experian's Pay Practice is entirely lawful.   Plaintiffs

cannot merely *allege* a common unlawful practice; rather they must *show* that such a practice

exists.   If all Plaintiffs were required to do is *allege* an unlawful practice, notice would issue

regardless of the veracity of the allegations.   While the burden is light, it is not invisible.

Put another way, even at this early stage, "Plaintiffs must establish a colorable basis for

their claim that a manageable class of 'similarly situated' Plaintiffs warrants so proceeding."

*Saleen*, 649 F.Supp.2d at 940–41.   Furthermore, courts are not to ignore evidence offered by the

employer demonstrating the lack of a common, unlawful policy.   Indeed, in cases such as this

one where employers have lawful pay policies, courts deny conditional certification on this basis.

*See, e.g., Griffith v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 129937 (S.D. Tex. Sept. 12,

2012); *Saleen*, 649 F.Supp.2d at 940–41; *Thompson*, 2008 U.S. Dist. LEXIS 115050; *West v.

Border Foods, Inc.*, 2006 U.S. Dist. LEXIS 46506 (D. Minn. June 12, 2006); *Ray v. Motel 6

Operating, Ltd. Partnership*, 1996 U.S. Dist. LEXIS 22564 (D. Minn. Mar. 18, 1996).[4]

An examination of the facts of these cases is instructive.   In *Griffith*, the plaintiffs

contended the defendant violated the FLSA by failing to pay its loan processors for unreported

overtime work.   2012 U.S. Dist. LEXIS 129937, *6.   In response, the employer proffered its

company-wide policy requiring employees to record their time accurately and stating that it paid

employees for all overtime.   *Id.*   Based on this policy, the employer made the exact same

---

[4] While Plaintiffs are correct that the Court does not generally make factual or legal findings at this initial
stage of certification, Plaintiffs overstate the Court's holding in *In re Pilgrim's Pride Fair Labor Stds. Act
Litig.*, 2008 U.S. Dist. LEXIS 93966, *9 (W.D. Ark. Mar. 13, 2008) to the extent they portray that
decision as holding that it does not matter whether the common allegation at issue in the case is an actual
violation of the law.   The case simply does not say that.   Neither the *Pilgrim's* case, nor any other, holds
that a court should conditionally certify a collective action and send out notice when the Plaintiffs have
failed to demonstrate that employer *violated* any law.

argument that Experian makes here; namely that Plaintiffs "ha[ve] failed adequately to demonstrate the existence of any official company policy or practice of denying overtime pay and that the resolution of [plaintiffs'] claims requires highly individualized inquiries into the circumstances of each individual's alleged off-the-clock work." *Id.* at *6-7. The court agreed and denied conditional certification because the plaintiffs "failed to demonstrate the existence of a company-wide policy or practice denying loan processors compensation for overtime work. [Plaintiff] therefore has failed to show that the putative class members are similarly situated for the purposes of conditional certification." *Id.* at *7.

In *Saleen*, the court held that the court must determine whether there is a "colorable basis" to support the plaintiffs' allegation of a common unlawful policy. 649 F. Supp. 2d at 940; *see also Thompson*, 2008 U.S. Dist. LEXIS 115050, *30 ("before subjecting an employer to the weighty burdens of a collective action, the Plaintiffs must establish a colorable basis for their claim that a manageable class of 'similarly situated' Plaintiffs warrants so proceeding.") The *Saleen* court held that the plaintiffs failed to establish a "colorable basis" even though they offered 112 declarations and a number of depositions indicating that employees were pressured to work through automatically-deducted meal breaks. *Id.* at 940-41. Contrary to the plaintiffs' position that the court should ignore contrary evidence offered by the employer, the court *evaluated* the employer's contrary evidence to determine that plaintiffs had failed to establish a "colorable basis." *Id.* at 941. The court noted that it was "unaware of any court that has agreed with plaintiffs' position that evidence submitted by a defendant resisting conditional certification should be completely ignored." *Id.* at 942. The court evaluated the employer's pay records which showed that it did in fact pay employees for time worked during automatically-deducted meal periods. *Id.* Here, Plaintiffs offer only their own declarations which, like in *Saleen*, are

6

totally contradicted by Plaintiffs' actual pay records which show they were in fact paid overtime for hours worked before and after their schedules. *See* pages _____ below.

The *Thompson* decision also reaffirms the appropriateness of considering the employer's objective evidence that the plaintiffs' allegation of a common unlawful policy is false. There, as here, the plaintiffs alleged the employer had a centralized policy requiring them to work off the clock. 2008 U.S. Dist. LEXIS 115050 at *16-17. In response, the employer offered its policy requiring employees to report all hours worked including the precise categories of time at issue in the case, just as in this case. *Id.* at *17. The court concluded that "the individualized nature of the Plaintiffs' claims make this case inappropriate for certification." *Id.* at *18. The court held that "the Plaintiffs' allegations are insufficient to establish either the existence of a central policy, or the performance of an identical, regularly-scheduled task, which would support the certification of a collective action." *Id.* In response to Plaintiffs' contention that this Court should ignore any consideration of the facts, the *Thompson* court held that "neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be seriously advanced if we were to overlook those facts which pointedly reflect that a collective action would be improper." *Id.* at *19. *See also Basco v. Wal-Mart Stores, Inc.,* 2004 U.S. Dist. LEXIS 12441, *5 (E.D. La., July 2, 2004) ("To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved."). The *Thompson* court concluded that in a case where the plaintiffs alleged they were instructed to only report their scheduled hours, which the employer showed was contrary to written policy (exactly the same allegation as in this case), conditional certification should be denied. *Id.* at *26.

Here, Plaintiffs offer no evidence other than their unsupported assertions that Experian paid them based on their schedules rather than their actual hours of work.  Plaintiffs offer no evidence to support their allegation that off-the-clock work was "imposed by Defendant's unified corporate management."  Plaintiffs also fail to allege any specific facts demonstrating that Experian encouraged such off-the-clock work in violation of its policy.

In actuality, Experian has a Pay Practice that applies at both of its call centers in Van Buren, Arkansas and Allen, Texas.  *See* Declaration of Rhonda White ("White Dec."), Exhibit 1 at ¶¶ 6-7.  Experian's Pay Practice requires that CCSs and supervisors report their hours of work such that all of their work time is paid.  That Pay Practice reads in relevant part:

> Non-exempt employees must accurately and completely record all time actually worked each day by including the actual start and end times as well as the start and end of time of meal breaks.  Time worked includes any time you spend on work-related duties, including but not limited to reviewing and responding to work-related emails and voicemails, reviewing company information, and logging in and off your computer. . .

*Id.* at ¶ 6.  Accordingly, Experian's policy requires employees to record as paid time all of the time Plaintiffs allege in their Complaint they worked off the clock.  This includes time spent preparing for taking customer calls and remaining at work to take final customer calls.  *See* Complaint, ¶ 35.  Experian's policy has been applicable since prior to 2015.  *See* Declaration of Thelma Palmatary ("Palmatary Dec."), Exhibit 2 at ¶ 23.

Experian's Pay Practice is not merely a piece of paper.  The Company trains its employees on the policy.  *See* Declaration of Teresa Yarbrough ("Yarbrough Dec."), Exhibit 3 at ¶¶ 17-18.  Experian requires all new CCSs and supervisors to complete onboarding when they are hired, which includes e-learning courses on the Company's policies, including the Pay Practice.  White Dec. at ¶ 12.  The Pay Practice is also available to all CCSs and supervisors on the Company's intranet.  *Id.* at ¶ 13; Palmatary Dec. at ¶ 23; Yarbrough Dec. at ¶ 17.  All CCSs

and supervisors are periodically (usually annually) required to acknowledge they have reviewed and are familiar with Company policies, including the Pay Practice.  White Dec. at ¶ 14.  During orientation, Experian's training team conducts a demonstration for all new employees on how to correctly complete a timecard, which includes what time should be included in paid time according to the Pay Practice.  *Id.* at ¶ 15.  Every Friday during new employees' training period, the training team reviews the employees' timecards with them to ensure they are accurately and completing including all of their work time.  *Id.* at ¶ 16.  The Company intranet also contains a link to a recorded training session on how to properly complete a timecard consistent with the Pay Practice that is always available to CCSs and supervisors.  *Id.* at ¶ 17.  CCSs verify they are told during training and by their supervisors that they get paid their actual hours worked rather than their scheduled hours and that they are to be paid for time spent logging into the computer and booting up the computer systems.[5]  Experian also disciplines CCSs that fail to report all of their work time as hours worked.  Yarbrough Dec. at ¶ 10; Monterroza Dec. at ¶ 22.

Not only does Experian train employees on the Pay Practice, Plaintiffs' own time clock records and schedules as well as the testimony of putative class members demonstrate that Plaintiffs' alleged common, unlawful policy—that Experian paid them based on their scheduled time rather than their actual work time—is false.[6]  Putative class members enter the time that they sit down at their desk before booting up the computer and logging into the computer systems as the beginning of paid time, even if that time occurs before or after their scheduled

---

[5] *See* Declaration of Kristen Cholousky ("Cholousky Dec."), Exhibit 4 at ¶ 8; Palmatary Dec. at ¶ 15; Yarbrough Dec. at ¶ 10; Declaration of Samantha Davis ("Davis Dec."), Exhibit 5 at ¶ 10; Declaration of Rebeca Matomoros ("Matomoros Dec."), Exhibit 6 at ¶ 12; Declaration of Drake Garretson ("Garretson Dec."), Exhibit 7 at ¶ 8; Declaration of Josephina Monterroza ("Monterroza Dec."), Exhibit 8 at ¶ 9; Declaration of Misty Layes ("Layes Dec."), Exhibit 9 at ¶ 8.

[6] *See* Cholousky Dec. at ¶ 12; Palmatary Dec. at ¶ 15; Davis Dec. at ¶ 9; Matomoros Dec. at ¶ 9; Garretson Dec. at ¶ 11; Monterroza Dec. at ¶ 11; Layes Dec. at ¶ 12.

time.[7]   As a result, Experian pays the CCSs for the time they spend pulling up their systems, reviewing their emails and booting up their computers at the beginning of their shifts.[8]  All of the time putative class members spend notating calls and completing administrative tasks about their calls occurs during paid time.[9]  Experian's supervisors ensure the CCSs are not just recording their schedules as their hours of work.  Palmatary Dec. at ¶¶ 15, 22; Monterroza Dec. at ¶ 12.

The Named Plaintiffs CCS's time records show that they regularly clocked out after their schedules and were paid until the time they stopped working.  White Dec. at ¶ 5.

- Beal's scheduled hours of work were 7:00 a.m.-4:00 p.m. Monday, Tuesday, Thursday and Friday and 8:00 a.m.-5:00 p.m. Saturday.  *Id.* at ¶ 4.  On a total of six occasions Beal clocked out at exactly 4:00 p.m.  *Id.*, Ex. C.  Beal clocked out *after* 4:00 p.m., and thus got paid until a time after her scheduled end time, on 250 occasions.  *Id.* at ¶ 5.  On 19 occasions, Beal clocked out at exactly 5:00 p.m., only eight of which were on Saturday.  *Id.*

- Morris's scheduled hours of work were 9:00 a.m.-6:00 p.m. Monday, Wednesday, Thursday, Friday and Saturday.  *Id.* at ¶ 4.  Morris clocked out at exactly 6:00 p.m. on 38 occasions.  *Id.* at ¶ 5.  Morris clocked out *after* 6:00 p.m., and thus got paid until a time after her scheduled end time, on 434 occasions.  *Id.*

- Roland's scheduled hours of work were 9:30 a.m.-6:30 p.m. Monday, Tuesday, Wednesday and Friday and 10:00 a.m.-2:00 p.m. Sunday.  *Id.* at ¶ 4.  Roland clocked out at 6:30 p.m. on 44 occasions and clocked out at 2:00 p.m. on eighteen occasions, four of which were on Sundays.  *Id.* at ¶ 5.  Roland clocked out *after* 6:30 p.m., and thus got paid until a time after her scheduled end time, on 155 occasions.  *Id.*

---

[7] *See* Cholousky Dec. at ¶¶ 8-9; Palmatary Dec. at ¶ 15; Yarbrough Dec. at ¶¶ 7-8; Davis Dec. at ¶ 7; Declaration of Kandace Heard ("Heard Dec."), Exhibit 10 at ¶¶ 8, 9; Declaration of Alissa Self ("Self Dec."), Exhibit 11 at ¶ 7; Matamoros Dec. at ¶ 7; Garretson Dec. at ¶ 7; Layes Dec. at ¶ 7.

[8] *See* Palmatary Dec. at ¶¶ 8-9; Yarbrough Dec. at ¶ 7; Matomoros Dec. at ¶ 7; Heard Dec. at ¶ 7; Self Dec. at ¶ 9; Garretson Dec. at ¶ 9; Monterroza Dec. at ¶ 10; Layes Dec. at ¶ 10.

[9] *See* Cholousky Dec. at ¶ 18; Palmatary Dec. at ¶ 19; Yarbrough Dec. at ¶¶ 9, 22; Davis Dec. at ¶ 17; Heard Dec. at ¶ 20; Self Dec. at ¶ 19; Matomoros Dec. at ¶ 18; Garretson Dec. at ¶ 19; Monterroza Dec. at ¶ 19; Layes Dec. at ¶ 18.

CCSs agree that when their calls or administrative work take them past their scheduled stop time, they enter the time they actually stopped working as the end of paid time.[10]

Likewise, Plaintiffs' pay stubs demonstrate that their allegations they were paid according to their schedules and were not paid overtime are false.  *See* White Dec. at ¶ 31. Between April 3, 2015 and March 31, 2016 Beal reported and was paid for 36.04 hours of overtime.  *Id.*  Between March 23, 2015 and June 17, 2017, Morris reported and was paid for 34.81 hours of overtime.  *Id.*  Between January 17, 2017 and October 31, 2017 (nine and a half months), Roland reported and was paid for 5.62 hours of overtime.  *Id.*  Between March 16, 2015 and February 25, 2018, Vinsant reported and was paid for 93.13 hours of overtime.  *Id.*  Vinsant reported and was paid overtime in approximately two-thirds of all pay periods in which he worked, which includes weeks in which he took paid time off.  *Id.*  In addition, all four Plaintiffs' pay stubs show that even in non-overtime weeks, their reported hours of work varied significantly and that Plaintiffs did not simply report their scheduled hours of work as they allege in this case.  *Id.*  Putative class members likewise have testified that when they reported having worked more than 40 hours per week, they were paid overtime.[11]

Accordingly, Plaintiffs' own punch records and pay stubs demonstrate that the alleged unlawful practice in this case (that they were only permitted to record 40 hours of work per week) (*see* Plaintiffs' Brief at 1) is false and therefore entitled to no consideration by this Court. Plaintiffs' admit this false allegation is the linchpin of their Motion.  *See* Plaintiffs' Brief at 10 ("It is this uniform practice that underlies Plaintiffs' allegation that Defendant has violated the

---

[10] *See* Cholousky Dec. at ¶¶ 11, 19; Yarbrough Dec. at ¶ 9; Davis Dec. at ¶ 8; Heard Dec. at ¶ 10; Self Dec. at ¶ 8; Matomoros Dec. at ¶ 8; Garretson Dec. at ¶ 10; Monterroza Dec. at ¶¶ 8, 9; Layes Dec. at ¶ 11.

[11] *See* Cholousky Dec. at ¶ 7; Palmtary Dec. at ¶ 17; Yarbrough Dec. at ¶ 19; Davis Dec. at ¶ 12; Heard Dec. at ¶ 15; Self Dec. at ¶ 14; Matomoros Dec. at ¶ 13; Garretson Dec. at ¶ 14; Monterroza Dec. at ¶ 14; Layes Dec. at ¶ 9.

overtime wage provisions of the FLSA with respect to Plaintiffs…")  Because the relevant policy is lawful and requires employees to report as work time the precise time Plaintiffs are claiming in this case, Plaintiffs have failed to satisfy even the lenient, Phase I "similarly situated" standard.

**B.    Plaintiffs' Motion Must Be Denied Because the Liability Inquiry is Entirely Individualized.**

To meet their burden at the notice stage, Plaintiffs must demonstrate a "sufficient reason to believe that there are issues common to the proposed class that are central to the disposition of the FLSA claims and that such common issues can be substantially adjudicated without consideration of facts unique or particularized as to each class member." *Houston v. URS Corp.*, 591 F. Supp. 2d 827, 832 (E.D. Va. 2008).  In other words, Plaintiffs must offer sufficient evidence such that the Court may "reasonably determine that the proposed class members are similarly situated enough to conditionally certify the collective action[.]" *Id.* at 831.  *See also Smith v. Frac Tech Servs.*, 2009 U.S. Dist. LEXIS 109930, at *12 (E.D. Ark. Nov. 24, 2009) (noting that, at the notice stage of conditional certification, plaintiffs must make substantial allegations of class-wide discrimination that are *supported by affidavits*).

Furthermore, in order for the plaintiffs and putative class members to be similarly situated in a § 216(b) collective action, issues specific to individual plaintiffs cannot predominate over questions common to the potential class as a whole.  *See Houston*, 591 F. Supp. 2d at 832; *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002); *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) ("[T]he court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case.").  Where there is no common policy or plan, but rather a variety of individualized issues, classwide treatment is unmanageable and inappropriate.  *See Sheffield*, 211 F.R.D. at 413 (denying certification where "each claim would require extensive

12

consideration of individualized issues of liability and damages"); *West v. Border Foods, Inc.*, 2006 U.S. Dist. LEXIS 96963, at *24 (D. Minn. June 12, 2006) (noting where "an off-the-clock claim requires significant individual considerations, it may be inappropriate for conditional certification").   Moreover, courts deny certification when determining whether the putative plaintiffs are similarly situated to the named plaintiffs requires an intensive inquiry into the factual circumstances underlying each individual employee's claim.[12]

In determining whether claims cannot be adjudicated efficiently because they require substantial individualized determinations, the Court's role at this stage requires screening unmanageable or judicially inefficient classes. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170-72 (1989) ("[T]he court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.")

The manageability factor that most counsels for denial of conditional certification is where individual, anecdotal testimony will be required to determine liability as opposed to the ability of a few plaintiffs to provide representative testimony.  *See Espenscheid*, 705 F.3d at 775. Many district courts have affirmed the rule that "where a fact-specific analysis of each individual

---

[12] *See, e.g., Smith*, 2009 U.S. Dist. LEXIS 109930, at *13 ("Numerous courts have denied certification of a collective action where determining whether putative plaintiffs are similarly situated will depend on a fact-intensive inquiry into the duties performed by each individual employee."); *Hinojos v. The Home Depot*, 2006 U.S. Dist. LEXIS 95434, at *7-8 (D. Nev. Dec. 1, 2006) ("[T]he need for separate mini-trials to resolve each individual's claim . . . is the antithesis of collective action treatment and would overwhelm the judicial system and eliminate any judicial efficiency that might be gained through a collective approach."); *McElmurry v. US Bank Nat'l Ass'n*, 2005 U.S. Dist. LEXIS 44452, at *49 (D. Or. July 29, 2005), *adopted in* 2005 U.S. Dist. LEXIS 44451 (D. Or. Oct. 7, 2005) (where an "off the clock" claim requires significant individual considerations, it may be inappropriate for conditional certification); *Lawrence v. City of Philadelphia*, 2004 U.S. Dist. LEXIS 8445, *2 (E.D. Pa. Apr. 29, 2004) (denying Motion for class certification where "off-the-clock" claim did not involve regularly scheduled hours that were worked by all members of the class, because "[t]he circumstances of those individual claims potentially vary too widely to conclude that . . .the Plaintiffs are similarly situated."); *England v. New Century Financial Corp.* 370 F. Supp. 2d 504, 509 (M.D. La. 2005) (finding conditional certification improper in a case where an "off-the-clock" claim involved a multitude of different managers at different locations, and where liability at one store location would not necessarily require a finding of liability at another location); *Basco,* 2004 U.S. Dist. LEXIS 12441, *7.

plaintiff's employment responsibilities would be required to determine [liability], class certification is not appropriate." *See, e.g., Harris v. Fee Transp. Servs., Inc.*, 2006 U.S. Dist. LEXIS 51437, *5 (N.D. Tex. May 15, 2006) (collecting cases and noting that "multiple courts in this circuit and elsewhere have refused to conditionally certify a class at the first stage of the analysis when the determination of [liability] would require a highly individualized inquiry"); *Pfaahler v. Consultants for Architects, Inc.*, 2000 U.S. Dist. LEXIS 1772, *2 (N.D. Ill. Feb. 8, 2000) ("the court would be required to make a fact-intensive, individual determination as to the nature of each claimant's employment relationship. . . . Where this is the case, certification of a collective action under the FLSA is inappropriate."). Indeed, a "collective action is oxymoronic . . . where proof regarding each individual plaintiff is required to show liability." *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804 (N.D. Ill. 2010).

Where, as here, the alleged unlawful policy does not, as a matter of course, result in a violation of the FLSA, making "individualized inquiries to establish liability" necessary, this factor "weigh[s] against a finding that the opt in claimants are 'similarly situated.'" *Stiller v. Costo Wholesale Corp.*, 298 F.R.D. 611, 631-32 (S.D. Cal. 2014). Where the employees' failure to comply with corporate policies is the basis of the alleged unlawful practice, courts deny conditional certification.[13]

---

[13] *See, e.g. Wood v. Mid–America Management Corp.*, 192 Fed. Appx. 378, 380–81 (6th Cir. 2006) ("At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists [because the employee reported only some overtime]. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid."); *Strait v. Belcan Eng'g Group, Inc.*, 911 F. Supp. 2d 709, 728-729 (N.D. Ill. 2012) (holding that when alleged violations do not stem from a company-wide policy or plan, collective treatment is not appropriate); *Powers v. Centennial Communs. Corp.*, 679 F. Supp. 2d 918, 922 (N.D. Ind. 2009) ("I can find no FLSA case where notice was ordered sent based on one person's individualized evidence of an FLSA violation and no indications of a company policy or plan to blame."); *Ray,* 1996 U.S. Dist. LEXIS 22564, *4 (denying conditional certification where the alleged off the clock time was not the result of a policy carried out by central

As previously discussed, Experian's policy requires Plaintiffs to report all of their hours of work including the time they allege in this case they worked off the clock and even gave them the opportunity to correct their time before it was submitted to payroll.  For this reason, the only way there could be any liability in this case to any individual CCS or supervisor is if either: (1) the individual employee chose to **violate** Experian's policies; or (2) a rogue supervisor permitted or knew of such a practice.  In either circumstance, the liability determination is individualized. Plaintiffs have also failed to offer any evidence that there are any individuals other than them that did not report all of their work time as they claim, as Plaintiffs have not offered any declarations from anyone other than themselves.

After conducting these individual determinations, the Court would also have to determine whether each CCS and supervisor worked more than 40 hours each week, including the individualized off-the-clock hours in order to determine whether each employee worked overtime.  If the work occurred during weeks in which a CCS or supervisor did not work 40 hours, there is no liability under the FLSA.[14]  This individualized inquiry is uniquely applicable

---

management because the policy is lawful; if an illegal scheme exists, it is implemented at a decentralized level); *Griffith*, 2012 U.S. Dist. LEXIS 129937, at *2–5 (observing that collective certification is inappropriate where an employee's choice to deviate from policy and inaccurately self-report work time is based on individual circumstances and "office-specific experiences relating to the actions of office or division supervisors"); *Carey v. 24 Hour Fitness USA, Inc.*, 2012 U.S. Dist. LEXIS 146471, *2 (S.D. Tex. Oct. 11, 2012) (denying conditional certification because an inquiry whether managers did not want employees to record accurate hours would "require extensive individualized analysis" and because "[w]hether a Club Manager would be willing to violate 24 Hour Fitness's written company policy against 'off-the-clock' work also requires an inquiry into the motivation and ethics of each Club Manager.").

[14] *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960); *Lundy v. Catholic Health Systems of Long Island, Inc.*, 711 F.3d 106 (2d Cir. 2013); *Monahan v. Cnty. Of Chesterfield*, 95 F.3d 1263, 1270-1272 (4th Cir. 1996); *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969); *United States DOL v. Cole Enters.*, 62 F.3d 775, 780 (6th Cir. 1995); *Hensley v. MacMillan Bloedel Containers*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 245 U.S. App. D.C. 147, 759 F.2d 167, 172 (D.C. Cir. 1985).

here as some of the putative class such as Plaintiff Roland, worked part-time schedules.  *See* Palmatary Dec. at ¶ 16; Yarbrough Dec. at ¶ 13; Garretson Dec. at ¶ 7.

The Court need not weigh the merits of Plaintiffs' claims to come to the conclusion that because Experian's policy requires employees to report the time at issue in this case as work time, any showing that an employee did not report such time will require individualized proof. For this reason, Plaintiffs' claims cannot be adjudicated without totally individualized liability determinations. Plaintiffs' Motion should be denied for this reason.

### C.   Plaintiffs and the Putative Class Are Not "Similarly Situated."

Another factor courts consider in determining whether to conditionally certify an FLSA collective is defenses available to the defendant which appear to be individual as to each plaintiff. *See Franks v. MKM Oil, Inc.*, 2012 U.S. Dist. LEXIS 128205, *9 (N.D. Ill. Sep. 7, 2012); *Gomez v. PNC Bank, N.A.*, 306 F.R.D. 156, 174 (N.D. Ill. 2014).  One such defense is where there are class members that have no liability.  In such cases, Defendant's individualized defenses to liability counsel against proceeding collectively.[15]

Here, there are class members to whom Experian cannot be liable.  This group includes five of the nine Named Plaintiffs as only four worked for Experian during the time period relevant to this case.  Plaintiffs Chelsea Dyer and Belinda Maxwell worked for Experian prior to

---

[15] *See, e.g., Camesi v. Univ. of Pittsburgh Med. Ctr.*, 2011 U.S. Dist. LEXIS 146067, *27-28 (W.D. Pa. Dec. 20, 2011) (decertifying the conditionally-certified FLSA class in light of defendant's individualized defenses which included, *inter alia*, "whether individual plaintiffs actually worked overtime without compensation.") (citing *Wright v. Pulaski County*, 2010 U.S. Dist. LEXIS 87283, *10 (E.D. Ark. Aug. 24, 2010); *Kuznyetsov v. W. Penn Allegheny Health Sys., Inc.*, 2011 U.S. Dist. LEXIS 146056, at *23-27 (W.D. Pa. Dec. 20, 2011) (noting that defendants had "significant individualized defenses" which precluded certification including that "some plaintiffs testified that they were paid for all time worked . . . while others testified that while they missed a meal break, they were permitted to leave work early . . . [and] still other plaintiffs testified that they did not know if they were not compensated because they could not understand their pay stubs.").

the maximum three year statute of limitations. *See* White Dec. at ¶¶ 8-9. Their claims are barred by the statute of limitations defense, which is an individualized defense applicable to them.

Experian also has an individualized defense that it never employed three of the Named Plaintiffs and presumably, much of the putative collective as Plaintiffs have pled it. Plaintiffs Ashley Hamilton, Antwan Hendry and Betty Fuller never worked for Experian at all, but rather worked for a temporary staffing agency that provided labor to Experian called Alorica, Inc. *Id.* at ¶ 9. In 2017, Dyer also worked for Alorica.[16] *Id.* at ¶ 8. Because these Plaintiffs never worked for Experian, Defendant cannot be liable to them. Permitting this case to proceed as a collective action would preclude Defendant from asserting this individualized defense.

In addition to creating an individualized defense, Plaintiffs have completely failed to offer any evidence that the Alorica employees are "similarly situated" to the Experian employees. Plaintiffs have failed to set forth any facts as to what Alorica's pay practices were such that this Court could possibly conclude they are "similarly situated" to the Experian employees as to the most fundamental allegation in this case—the relevant pay practice.[17] By

---

[16] These Alorica employees do not work in Experian's call centers. Rather, they work in their own call centers and are provided access to Experian's systems. *Id.* at ¶ 11. Alorica maintains its own substantive operational specifications, procedures and policies. *Id.* at ¶ 22. The Alorica employees are not subject to Experian's policies including the Pay Practice. *Id.* at ¶ 23. Alorica is responsible for recruiting, screening, hiring and training its own personnel. *Id.* at ¶ 24. Alorica is responsible for providing its own facilities, managerial and supervisory support, training and quality assurance. *Id.* at ¶ 25. Alorica is responsible for providing the general day-to-day operating supplies for the performance of its services, including technology. *Id.* at ¶ 26. Experian does not direct the work of the Alorica employees. *Id.* at ¶ 19. Alorica is exclusively responsible for all employment decisions for its employees including counseling, disciplining, hiring, evaluating, terminating and setting the pay rates of its employees. *Id.* Alorica conducts its own quality assurance for its employees. *Id.* at ¶ 28. The Agreement between Experian and Alorica specifically disavows any theory that Experian "jointly employs" Alorica's employees, nor have Plaintiffs set forth any such argument in their Complaint or Motion. *Id.* at ¶ 20.

[17] In fact, Alorica maintains all of its own payroll and personnel records and computes its own wages. *Id.* at ¶ 19. Indeed, Defendant is paying Alorica for time assuming that Alorica's employees *are* including all log-on time and non-transaction handling time such as time spent completing paperwork as compensable work time. *Id.* at ¶ 27.

conditionally certifying this collective action, the Court would knowingly be sending notice to individuals to whom there can be no liability for Defendant and for whom Plaintiffs have not even alleged an applicable pay practice much less a pay practice similar to Experian's.

Certification of a collective that includes both CCSs and Supervisors together would also preclude Experian from presenting individualized defenses against the claims of the supervisors such as Mr. Vinsant.  The factual circumstances in which a supervisor could conceivably have worked off the clock materially vary from those of a CCS.  Plaintiffs' arguments as to why they worked off the clock are because: (1) they need to be ready to take their first call at the start of their shift; and (2) because callers may keep them working after their shift times.  Neither circumstance applies to the Supervisors.  Most of the CCS's primary duties are to take phone calls, assist customers and move on to the next call.[18]  The Supervisors are not responsible for taking calls at all (other than the occasional customer that asks for a supervisor).  Palmatary Dec. at ¶ 6; Monterroza Dec. at ¶ 7.  The supervisors' primary duty is supervising the CCSs, not helping customers.  *Id.*  As a result, the supervisors' work time is not at the whim of incoming callers which is the reason Plaintiffs allege the CCSs need to be ready to take calls at their start time and work after their scheduled shift stop time.  Palmatary Dec. at ¶ 11.

Similarly, Experian employs seventeen (17) CCSs at the Van Buren call center that respond to customer emails instead of taking calls.  *See* Davis Dec. at ¶ 6.  Like the supervisors, because these CCS's work time is not subject to being on the phone with a caller, the CCSs control their schedule and make sure to close out their active cases by their shift end time.  *Id.* at ¶ 7.  For these reasons, Plaintiffs fail to offer any evidence to explain why a supervisor or a CCS that responds to emails would need to perform work after the end of their shifts.

---

[18] *See* Palmatary Dec. at ¶ 6; Cholousky Dec. at ¶ 6; Yarbrough Dec. at ¶ 6; Heard Dec. at ¶ 6; Self Dec. at ¶ 6; Matamoros Dec. at ¶ 6; Garretson Dec. at ¶ 6; Monterroza Dec. at ¶ 6; Layes Dec. at ¶ 6.

Finally, as the individuals that were supposed to ensure that off-the-clock work did not occur, Supervisors cannot possibly be "similarly situated" and included in the same class as the CCSs.  Supervisors such as Vinsant are responsible for administering company policies such as the Pay Practice to the CCSs.  White Dec. at ¶¶ 29-30.  Accordingly, if there were violations of the Pay Practice, it is the supervisors that permitted such violations by failing to do their job.

### D.     Experian Opposes Portions of Plaintiff's Proposed Notice and Manner of Distribution as Flawed or Unnecessary.

#### 1.   Plaintiffs' request for notification by text and e-mail is unnecessary.

Should the Court grant Plaintiffs' Motion for Conditional Certification, Experian opposes Plaintiffs' request to send notice via text message and e-mail in addition to regular mail (Doc. No. 17-4).  Plaintiffs provide no basis for the need for such a publicity onslaught.

Notice by any mechanism other than first-class mail is redundant, wasteful of the Parties' resources, and could compromise the integrity of the notice process.  First-class mail is the preferred and most reliable method of sending class notice in FLSA cases.[19]  First class mailing "provides a controlled method by which individual notification can be provided through a reliable process" and "ensures the integrity of a judicially controlled communication directed to the intended audience."  *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Col. 2002) (rejecting alternative forms of notice, holding mailing sufficient).  Unlike first-class mail, e-mail and text notice cede the Court's control over the process by enabling the recipient to edit the message or forward it to unintended recipients.  Such concerns were noted by the courts in *Reab*, 214 F.R.D. at 630-631, *Espenscheid*

---

[19] *See, e.g., Hinterberger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944, at *42 (W.D.N.Y. Oct. 20, 2009) (stating that first-class mailing is generally considered the "best notice practicable" and "sufficient to provide potential class members … the notice to which they are entitled."); *Aboud v. City of Wildwood*, 2013 U.S. Dist. LEXIS 70083, at *24 (D.N.J. May 17, 2013) (mail only because "plaintiffs have not shown that first-class mail is insufficient"); *Steinberg v. TD Bank, N.A.*, 2012 U.S. Dist. LEXIS 89086, at *18 (D.N.J. June 27, 2012) ("first-class mail and home addresses are generally deemed sufficient, and additional information and contact methods are typically provided only if necessary.").

*v. DirectSat USA, LLC*, 2010 U.S. Dist. LEXIS 55578, 40-41 (W.D. Wis. June 4, 2010) and *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014).

The purpose of the notice is to inform potential plaintiffs of the existence of a lawsuit in which they may choose to participate. *See Hoffman La-Roche*, 493 U.S. at 165; *Witteman v. Wis. Bell, Inc.*, 2010 U.S. Dist. LEXIS 8845, at *10 (W.D. Wis. Feb. 2, 2010) (same). The purpose is not to encourage participation in, harass, solicit, or otherwise invade the privacy interests of potential plaintiffs. *See Robinson v. Empire Equity Group, Inc.*, 2009 U.S. Dist. LEXIS 107607 (N.D. Md. Nov. 18, 2009) (holding that a third party administrator was necessary in order to safeguard the privacy interests of putative plaintiffs). Plaintiff's duplicative forms of proposed notice may give the putative class members the idea that the Court encourages their participation. *Summa v. Hofstra Univ.*, 2008 U.S. Dist. LEXIS 62591, at *18-19 (E.D.N.Y. Aug. 14, 2008) (rejecting, in relevant part, plaintiff's request for email addresses where "Plaintiff provides no justification regarding her request for additional information").

Plaintiff's request that the notice be disseminated by text message is also intrusive, has a financial cost to putative collective members, and may result in misleading notification. Receipt of notice by text message or email (if reviewed on an employee's cellular phone) may require data usage – an expense that putative collective members would have to unnecessarily incur after already receiving notice by first class mail. Finally, with spam filters, privacy settings, and the sheer amount of e-mail received by individuals from commercial entities, it is possible that the email or text message would never be received, or received but automatically shuffled to junk mail. Further, often multiple individuals have access to an email account or phone messages (*e.g.*, family members or others residing at the same residence), which could result in a dispute about whether the notice was ever received or even submission of consents by non-class members.

Absent an actual showing that first class mail is insufficient, the Court should deny Plaintiff's intrusive, unduly burdensome, and unnecessary request for dissemination by email and text message.[20]

### 2. *Plaintiffs' request for a second notice is unsupported and unnecessary.*

Experian opposes Plaintiffs' request for a follow-up postcard.  Doc. No. 17-3.  Follow-up reminder notices are superfluous and could be seen as harassment or as encouragement by the Court to join the lawsuit.  Because the purpose of notice is simply to inform class members of their rights, additional "reminder[s are] unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit." *Witteman*, 2010 U.S. Dist. LEXIS 8845 at *10.  Courts decline to allow reminder or follow-up notices, because it is recognized that they stir up litigation by inappropriately impressing upon potential plaintiffs that the Court is encouraging them to join the lawsuit.[21] *Calderon v. GEICO Gen. Ins. Co.*, 2011 U.S. Dist. LEXIS 2815, *3 (D. Md. Jan. 12, 2011) (denying plaintiffs' request to send reminder notices to class members because "[a] single notice in the form attached to this Court's order is more than sufficient to provide notice to the potential opt-in plaintiffs who may choose to participate").

Plaintiffs have not demonstrated any reason for sending reminder postcards to members of the proposed collective action.  *See Guzelgurgenli v. Prime Time Specials, Inc.*, 883 F. Supp. 2d 340, 358

---

[20] If notice by first class mail is returned as undeliverable for some of the putative collective members, then Defendant would consent to a second notice to those employees by alternative means.

[21] *See e.g., Byard v. Verizon West Virginia, Inc.,* 287 F.R.D. 365, 373 (N.D.W. Va. 2012) (finding that, where the notice period was only sixty days, a reminder notice was both unnecessary and potentially improper as it could inappropriately encourage putative plaintiffs to join the suit); *Knispel v. Chrysler Group, LLC,* 2012 U.S. Dist. LEXIS 21188 (E.D. Mich. Feb. 21, 2012) ("There shall not be any 'reminder notice' provided … because they are unnecessary and could potentially be interpreted as encouragement by the Court to join the lawsuit"); *Whittington v. Taco Bell of Am., Inc.*, 2012 U.S. Dist. LEXIS 64855, *5 (D. Colo. May 9, 2012) (denying request to send a reminder notice because "authorizing Plaintiff to resend the notice packages at this late stage could reasonably be interpreted to denote the court's disappointment with th[e] opt-in rate and encouragement to join this action"); *Barnwell v. Corr. Corp. of Am.*, 2008 U.S. Dist. LEXIS 104230, *6 (D. Kan. Dec. 9, 2008) ("The court believes that the notice itself is adequate to advise potential class members of their right to opt-in as plaintiffs in this case.").

(E.D.N.Y. 2012) (denying plaintiffs' request to send a reminder notice when plaintiffs did not identify "any reason why a reminder notice is necessary in this particular case").  Allowing for an additional mailing would only unnecessarily pressure and harass individuals who already may have made an affirmative decision not to join the case.  *See Id.* at 357 (the reminder notice is "unnecessary and could potentially be interpreted as encouragement by the Court to join the lawsuit") (citation omitted).

Plaintiffs' request for reminder notices is also premature.  Plaintiffs have not offered any evidence that plaintiffs anticipate encountering difficulties contacting putative class members. In other words, Plaintiffs have not offered any evidence demonstrating that the mail notice is ineffective at informing the class members of their rights.  *See In re Bank of Am. Wage & Hour Empl. Litig.*, 286 F.R.D. 572, 601 (D. Kan. 2012) (rejecting request for reminder notices where plaintiffs failed to present evidence or argument that they anticipate encountering difficulties contacting putative class members; holding that mailing, without the use of reminder notices, provides sufficient notice and represents the most efficient means of providing notice).

Nor do Plaintiffs offer any evidence that multiple notices are any more effective than a single notice at informing putative class members of their rights.  The "reminder notices" will be sent to the same addresses and/or e-mail addresses as the initial notice.[22]  If anything, recipients of "reminder notices" are more likely to disregard the letter than an initial notice that is sanctioned by a federal district court.  Plaintiffs' desire for repeated solicitations of potential clients should not be sanctioned by this Court.

### 3.  Plaintiffs' proposed notice is overly broad in temporal scope.

Experian opposes Plaintiffs' proposed Notice of Right to Join Lawsuit (Doc. No. 17-1) and Consent Forms (Doc. Nos. 17-2 and 17-5) because the class notice should not be sent to

---

[22] If the addresses for some former employees turn out to be incorrect because they have moved, Plaintiffs are perfectly capable of engaging an outside vendor to obtain accurate contact information and re-send the Court-sanctioned notice to the former employees without an order from this Court.

anyone who, as of the *date of the mailing*, has not worked for Experian within three years. Hypothetically, if the notice were to go out on June 1, 2018, an employee that has not worked for Experian since June 1, 2015 could not assert a timely claim under the FLSA.  For this reason, Plaintiffs' request that notice be issued to employees that worked for Experian any time since March 20, 2015 should be rejected.

A cause of action only "accrues" under the FLSA when an employee "gives his consent in writing to become such a party and such consent is filed" with the Court.  29 U.S.C. § 256. The FLSA further provides that an action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  Accordingly, employees can only recover for a maximum of three years prior to the date they file their consent.  Plaintiffs' proposed temporal scope would result in the notice being sent to employees that cannot file a timely claim.  This can be avoided by limiting the temporal scope of the notice to three years prior to the date the Court issues notice to the present.

The only argument Plaintiffs advance for issuing notice to employees that worked for Experian between March 20, 2015 and the date that is three years prior to the date notice is issued is "this keeps the door open for this Court to grant equitable tolling to some or all potential plaintiffs if the facts support it."  Doc. No. 18 at 13.  However, Plaintiffs make no argument to support the extraordinary circumstances that could justify an exception from the statute of limitations.  Indeed, tolling is frowned upon absent extraordinary circumstances in order to uphold the integrity of statutes of limitation. *See Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (Equitable tolling is an "extraordinary remedy which should be extended

only sparingly.")  The federal courts "have typically extended equitable relief only sparingly" and no conceivable basis for such tolling has been offered here such that this Court should send notice to individuals that very likely will have no ability to participate in this case.  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

> 4.  *Plaintiffs' proposed notice does not fully advise putative class members of their obligations or the Parties' positions.*

Plaintiff's proposed notice also fails to advise putative class members of their obligations to participate in discovery and potentially at trial.  Without such language, potential participants will be misled about obligations which the litigation might impose on them and cannot make an informed decision about whether to participate.  Courts that have addressed whether notices and opt-in forms should include language informing putative plaintiffs of the possibility they may be required to participate in discovery have consistently ruled that they should give such notice.[23] Accordingly, Experian proposes the notice include the following language:

> While this lawsuit is pending, you may be asked to respond to written questions, produce documents, or give testimony either before trial at a deposition or during trial.  If you join the lawsuit, you must preserve all documents relating to your employment at Experian that are currently in your possession.

The Notice should also explain Experian's position that the Company's policy has assured throughout the relevant time period that the putative class members have been paid for the time in question in this lawsuit.  Plaintiffs' allegation that Experian has a common policy of failing to pay for time worked outside of scheduled work time is false and should not be

---

[23] *See Ahle v. Veracity Research Co.*, 2009 U.S. Dist. LEXIS 87590, *20 (D. Minn. Sept. 23, 2009) (approving notice including language stating "[i]f you choose to join this action, you will be expected to participate in the litigation, which may include being asked to respond to written questions, appear for a deposition, and testify at trial."); *Creten-Miller v. Westlake Hardware, Inc.*, 2009 U.S. Dist. LEXIS 60393, *18 (D. Kan. July 15, 2009) (holding "that it is reasonable and necessary to include language which informs potential participants that they may be required to" participate in discovery); *Regan v. City of Charleston,* 2014 U.S. Dist. LEXIS 96317, *34 (D.S.C. July 16, 2014) (accepting language notifying potential plaintiffs of the possibility they will be required to participate in discovery and trial).

promoted as uncontested fact.  The Notice should state that sending in an opt-in form does not guarantee any recovery, especially in light of Experian's practice of paying for the time in question.  *See Jones v. Casey's Gen. Stores*, 517 F. Supp. 2d 1080, 1089 (S.D. Iowa 2007) ("[O]ne-sided, misleading communications with putative opt-in collective members . . . could easily have the effect of tainting the entire putative class and jeopardizing this entire litigation."). Experian proposes that the Court-sanctioned notice include the following:

- Throughout the relevant time period in this case (the past three years), Experian maintains that it has paid all hourly workers in the conditionally-certified class for work performed outside of scheduled hours of work.  As a result, Experian's position in this lawsuit is that it has already paid all hourly employees for the alleged "off the clock" time at issue in this litigation.

### III.   <u>CONCLUSION</u>

Plaintiffs cannot demonstrate liability on a collective basis because they fail to identify a common unlawful policy or practice.  Plaintiffs' allegation of off-the-clock work cannot result in liability to any employee without conducting an individualized analysis of whether each individual *violated* Experian's policy.  Experian's defenses are individualized and Plaintiffs are not "similarly situated" because both the Named Plaintiffs and the putative class include individuals that did not work for Experian and some Plaintiffs' claims are barred by the applicable statute of limitations.  Finally, Experian's defenses against the claims of the CCSs and supervisors are materially different for the reasons explained herein.  Accordingly, Plaintiffs cannot satisfy their burden of demonstrating they and the members of the putative FLSA class are "similarly situated" under 29 U.S.C. § 216(b).  Therefore, Defendant respectfully requests this Court deny Plaintiffs' Motion and for any further or other relief as this Court deems just and proper.

Respectfully submitted this 14th day of May, 2018.

*/s/ Eric R. Magnus*
Eric R. Magnus
Georgia Bar No. 801405
JACKSON LEWIS P.C.
1155 Peachtree Street, Suite 1000
Atlanta, Georgia  30309-3600
Telephone:       404-525-8200
Facsimile:       404-525-1173

Don A. Smith
Arkansas Bar No. 62026
Smith, Cohen & Horan, PLC
1206 Garrison Ave.
Post Office Box 10205
Fort Smith, AR 72917-0205
Phone: (479) 782-1001
Fax: (479) 782-1279

ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2018, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system which will send email notification of such filing to the following counsel of record:

> Lydia Hamlet (AR Bar No. 2011082)
> Chris Burks (AR Bar No. 2010207)
> Josh Sanford (AR Bar No. 2001037)
> SANFORD LAW FIRM, PLLC
> One Financial Center
> 650 S. Shackleford, Ste. 411
> Little Rock, AR 72211
> Telephone: (501) 221-0088
> Facsimile: (888) 787-2040
>
> ATTORNEYS FOR PLAINTIFFS

s/ Eric Magnus_____
Counsel for Defendant

4836-3881-5074, v. 3