IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**CHARLES VINSANT, TARA BEAL and**                            **PLAINTIFFS**
**BRITTANY MORRIS,**
**Each Individually and on Behalf of All**
**Others Similarly Situated**

vs.                      Case No. 2:18-cv-2056-PKH

**MYEXPERIAN, INC., EXPERIAN INFORMATION**
**SOLUTIONS, INC., and CONSUMERINFO.COM, INC.**        **DEFENDANTS**

**JOINT MOTION (WITH INCORPORATED BRIEF) FOR APPROVAL OF**
**COLLECTIVE ACTION SETTLEMENT**

COMES NOW Plaintiffs Charles Vinsant, Tara Beal and Brittany Morris ("Plaintiffs"), former Customer Care Specialists and Managers at Defendants MyExperian, Inc., Experian Information Solutions, Inc. and Consumerinfo.com, Inc.'s ("Defendants") and jointly submit this Motion for Approval of Collective Action Settlement.

**I.     INTRODUCTION**

Plaintiffs have reached an agreement to settle this case with Defendants regarding Defendants' alleged class and collective action violations of the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"). The terms of the settlement are contained in the Settlement Agreement ("Agreement") attached as Exhibit 1.[1] Plaintiffs and Defendants now wish to execute the settlement approval process outlined in the *Manual for Complex Litigation (Fourth)* §§ 21.632-21.635 (2004). They seek entry of an order:

- Granting approval of the settlement;

---

[1] Exhibit 1 also contains a proposed order of approval and a breakdown of settlement shares amongst the FLSA opt-ins.

- Directing Defendants to issue checks in the amounts indicated in Exhibit B to the Settlement Agreement to those individuals that filed consents to participate in this Action and to send those checks to Class Counsel, who will distribute them to the Opt-In Plaintiffs.
- Dismissing this case with prejudice.

The settlement provides substantial benefits to the individuals that filed consents to participate in this action following this Court's conditional certification of a collective action under the FLSA. *See* Doc. 29. Defendants will pay attorneys' fees and expenses and Plaintiffs' incentive awards if approved by the Court.

The proposed settlement addresses Plaintiffs' litigation objectives. The settlement was negotiated by lawyers experienced in complex litigation. The Parties settled only the claims of those that affirmatively opted into the case following this Court's granting of Plaintiffs' Motion for Conditional Certification. For these reasons, the settlement enjoys a presumption of fairness.

II. **SUMMARY OF THE LITIGATION AND SETTLEMENT**

    A. **The Litigation**

This case was filed on or about March 20, 2018, in the Western District of Arkansas. Plaintiffs asserted claims against Defendants under the FLSA and AMWA. Plaintiffs alleged that Defendants failed to compensate Customer Care Specialists and Managers at Defendants' Van Buren, Arkansas and Allen, Texas call centers for their time spent before and after their shifts booting up and logging into and out of their required computer systems and programs. On April 13, 2018, Plaintiffs moved to conditionally certify a collective action under the FLSA. *See* Doc. 17. On July 5, 2018, this Court granted Plaintiffs' Motion over strenuous objection from

Defendants. *See* Doc. 29. Following this Court's Order, 158 individuals filed consents to participate. Nineteen (19) of these individuals did not work for Defendants during the relevant statute of limitations. Opt-in Betty McCane had previously signed a general release agreement with Defendants as part of her termination from the Company. Accordingly, the Parties' settlement covered 137 current and former Customer Care Specialists and one former Customer Care Manager, Named Plaintiff Charles Vinsant. Plaintiffs did not move to certify a class action under the AMWA and Federal Rule of Civil Procedure 23. For that reason, the Parties are only setting the claims of the individuals that filed consents to participate.

### B. Settlement Discussions and Discovery

Plaintiffs' counsel and counsel for Defendants engaged in extensive negotiations concerning the possible settlement of the claims of the opt-ins, including electronic and in-person negotiation sessions in Dallas, Texas. These sessions followed exchange of formal discovery requests, Defendants' depositions of the three named Plaintiffs in Fort Smith, Arkansas and Plaintiffs' deposition of Defendants' 30(b)(6) witness in Dallas, Texas.

### C. The Terms of the Proposed Settlement

#### 1. Relief Available to Opt-Ins

Under the terms of the proposed settlement, Defendants will provide significant benefits to the individuals that filed consents to participate in the conditionally-certified FLSA collective. The settlement class is comprised of all current or former hourly-paid Customer Care Specialists who work or worked at Defendants' Van Buren, Arkansas and Allen, Texas call centers that filed timely consents to participate in this case. As discussed above, there are 158 such individuals. Defendants will pay $39,670 to these individuals in the amounts reflected in Exhibit B. The formula the Parties used to determine each Class Member's share of the $39,670 settlement

proceeds was based on the number of workweeks worked by each Opt-in during the three years prior to the date each individual filed their consent to participate. This is the maximum applicable statute of limitations under both the FLSA and AMWA. Defendants have also agreed to pay each of the three Named Plaintiffs who were deposed in this action service awards of $1,000 each.

The settlement approximates 4.13 minutes per day of additional pay for pre- and post-shift work time for each Opt-in. This amount is fair and reasonable in this case because, as explained in Defendants' Opposition to Plaintiffs' Motion for Conditional Certification, Defendants' position is that it was against company policy to perform boot up and login and logoff duties off the clock. Defendants' position is that all of these activities should have occurred on the clock and that Defendants trained the Customer Care Specialists to follow this policy. The agreed settlement amount accounts for the possibilities that this Court would decertify the FLSA collective or grant a Motion for Summary Judgment on liability.

### 2. Check Distribution and Release Provisions

Following this Court's approval of the Agreement, Defendants will issue checks in the amounts reflected in Exhibit B to each Opt-in. All of the amounts reflected in Exhibit B will be wages subject to normal payroll tax withholding and W-2 reporting. Defendants shall be responsible for all employer-paid and due taxes on these wages, including FICA, FUTA and state unemployment, but shall not be liable for any other taxes. Class Members' checks will automatically expire if they are not cashed within 90 days of their issuance date. In such event, those Class Members will be deemed to have waived irrevocably any right in or claim to a settlement share, but the Settlement Agreement nevertheless will be binding upon them.

All Class Members will be bound by the Court's approval of the settlement and release of

the FLSA and AMWA claims as set forth in the Agreement.

### 3. Attorneys' Fees and Expenses

The Parties have agreed to an award to Class Counsel of $33,000 in attorneys' fees and $6,830 in costs. Because this amount agreed by the parties is over and above that amount which is set aside for the benefit of the Class, this award will not affect any Class Members' recoveries. The total settlement amount, inclusive of attorneys' fees, is $82,500.00. Courts have the discretion to award as an attorneys' fee a "percentage of the benefit" to the class, defined as "some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017). The agreed attorneys' fee is 40% of the total settlement amount, consistent with fees approved in class action cases by the Eighth Circuit and other courts. *Id.* at 399 ("courts have frequently awarded attorneys' fees ranging up to 36% in class actions.").

### III. APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

#### A. The Settlement of a Class Action Is Favored And Should Be Approved If It Falls Within The Range of Reasonableness.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005). *See also Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them."); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. Dec. 8, 2009) ("Especially in the context of class actions, the federal judiciary has a strong policy of promoting and encouraging settlements between litigating parties."); *In re Wireless Tel. Fed. Cost Recovery*

*Fees Litig.*, 2004 U.S. Dist. LEXIS 23342 (W.D. Mo. Apr. 20, 2004) ("The policy in favor of settlement is so strong that such agreements are presumptively valid."); *Newberg on Class Actions* § 11.41 (Fourth) (2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") "This policy is particularly appropriate in class actions: In the class action context in particular, 'there is an overriding public interest in favor of settlement" settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.'" *Id.* (citing *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980)).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). In this case, because the Parties are only settling the claims of the Opt-ins, and each Opt-in has already affirmatively consented to participate in this Action, the Parties are simply issuing checks rather than sending notice to the class.

"Under Federal Rule of Civil Procedure 23(e)(2), the Court may approve a Settlement Agreement only upon a 'finding that it is fair, reasonable and adequate.'" *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 570 (S.D. Iowa 2011) (quoting Fed. R. Civ. P. 23(e)(2)). This determination is entrusted "to the sound discretion" of the district court. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). When making this determination, "the district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). "By definition, a fair settlement need not satisfy every concern of the plaintiff Class, but may fall anywhere within a broad range of upper and lower limits. The essence of settlement is compromise . . . a

solution somewhere between the two extremes. *Alliance To End Repression v. City of Chicago*, 561 F. Supp. 537, 548 (N.D. Ill. 1982).

The parties request that the Court grant approval of the settlement.

### B. The Proposed Settlement Negotiated By The Parties Enjoys A Presumption Of Fairness.

At the outset, the settlement should be accorded a presumption of fairness. "A presumption of [fairness] applies to a class settlement reached in arm's-length negotiations between experienced, capable counsel." *Austin v. Metro. Council*, 2012 U.S. Dist. LEXIS 41750, *18-19 (D. Minn. Mar. 27, 2012); see also 4 Newberg § 11.41 (noting that where the settlement is the product of arm's-length negotiations between capable counsel experienced in complex class action litigation, the court should begin its analysis with a presumption that the settlement is fair and should be approved). Courts give "great weight" to and may "rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Welsch v. Gardebring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987). Additionally, the court "does not have the responsibility of trying the case or ruling on the merits of the matters resolved by the agreement . . . . Rather, the very purpose of compromise is to avoid the delay and expense of such a trial." *White v. National Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993).

Here, the settlement is presumed fair and falls within the range of possible approval. The settlement was reached exclusively through arm's length bargaining over a period of months, through numerous written exchanges, telephone conferences and an in-person meeting in Dallas, Texas and only after the Parties exchanged written discovery and took depositions of the three Named Plaintiffs and Defendants' 30(b)(6) witness. The parties discussed the merits of the claims and defenses and the relief available to Class Members. After reaching a complete

settlement agreement in principle, the parties turned their attention to documenting the settlement and exchanged draft settlement agreements.

In negotiating the settlement, Plaintiffs had the benefit of attorneys who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. In Class Counsel's view, the settlement provides substantial benefits to the Class Members, especially when considering, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. The settlement here is presumptively fair and worthy of approval.

C. **The Settlement Benefits Fall Within The Range Of Possible Recovery.**

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Buckley v. Engle*, 2011 U.S. Dist. LEXIS 59022 (D. Neb. June 2, 2011) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999)). The factors the courts are to consider are the following:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Moore v. Ackerman Investment Co.*, 2009 U.S. Dist. LEXIS 78725, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009). The preliminary approval determination is not an ultimate determination of whether the settlement is fair, reasonable and adequate, however. Rather, the Court must determine "whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir.

1982). This necessarily involves a preliminary determination of the settlement's fairness, reasonableness and adequacy. *See Manual*, § 21.632. If the Court finds the settlement "within the range of possible approval," it should then order that the Class Members be notified of the settlement and of a formal fairness hearing to be held on the question of settlement approval. *See id.* at § 40.42 (model preliminary approval order).

Here, the settlement provides Class Members with substantial relief, without the delay and expenses of the trial and post-trial proceedings. The Agreement is also fair in that it permits ready access to the Settlement Fund for Class Members. Relief is available to all current and former Customer Care Specialists and Managers that opted into this case who worked at Defendants' Van Buren, Arkansas and Allen, Texas call centers within three years of the dates they filed their consents to participate in this case.

If the parties did not agree to settle the case, discovery, motions practice and a trial would be lengthy and expensive. The Class Members would face the risk of argument by Defendants that some or all of the Class Members did not work off the clock because the company expected employees to log in and out of and boot up all of their computer programs on the clock. Defendants trained according to this policy. The Class Members would also face the risk of decertification of the FLSA collective as Defendants would argue that liability depended upon each individual employee showing that he or she violated company policy and worked off the clock. Even if the Class Members obtained a judgment in their favor, an appeal would inevitably follow. In light of those risks, the proposed settlement is a fair, reasonable and adequate compromise of the issues in dispute that provides meaningful relief to Class Members.

In addition, the incentive awards to the Named Plaintiffs Charles Vinsant, Tara Beal and Brittany Morris are routine, appropriate and serve public policy by encouraging individuals to

come forward to protect the rights of others, while at the same time compensating them for the time, effort, and inconvenience to represent the interests of the Opt-ins. *See e.g., In re Linderboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, *19 (E.D. Pa. Jun. 2, 2004) (incentive awards of $25,000); Brotherton v. *Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) ($50,000 incentive award); *see also Manual* § 30.42 at n.763. More importantly, because the Named Plaintiffs conferred $39,670 benefits, respectively, upon the absent class (exclusive of fees and costs), equity dictates that they receive an incentive award from the fund for the benefit they have conferred.

### IV.  CONCLUSION

For the foregoing reasons, the Court should grant approval of the proposed settlement and enter the accompanying Order of Preliminary Approval included in Exhibit A.

Respectfully submitted this 21st day of February, 2019.

| **SANFORD LAW FIRM, PLLC** | **JACKSON LEWIS, P.C.** |
|---|---|
| By:/s/ Josh Sanford *(with permission)*<br>Steve Rauls (AR Bar No. 2011170)<br>Josh Sanford (AR Bar No. 2001037)<br>SANFORD LAW FIRM, PLLC<br>One Financial Center<br>650 S. Shackleford, Ste. 411<br>Little Rock, AR 72211<br>Telephone: (501) 221-0088<br>Facsimile: (888) 787-2040<br>steve@sanfordlawfirm.com<br>josh@sanfordlawfirm.com<br><br>*CLASS COUNSEL* | By: /s/ Eric R. Magnus<br>Eric R. Magnus (GA #801405)<br>1155 Peachtree Street N.E.<br>Suite 1000<br>Atlanta, GA 30309-3600<br>Tel: 404-525-8200<br>Fax: 404-525-1173<br>magnuse@jacksonlewis.com<br><br>*ATTORNEY FOR DEFENDANTS* |